**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ANTHONY LAMAR MCWHITE, | ) | Civil Action No. 22-1497 |
| Petitioner, | ) ) ) | Magistrate Judge Maureen P. Kelly |
| v. | ) ) | |
| ATTORNEY GENERAL JOSHUA SHAPIRO; KEVIN RANSOM; *and* THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | ) ) ) ) ) | Re: ECF No. 13 |
| Respondents. | ) ) | |

**MEMORANDUM ORDER**

Anthony Lamar McWhite ("Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania.

Petitioner seeks federal habeas relief pursuant to 28 U.S.C. § 2254 from his state criminal conviction of Criminal Homicide, in violation of 18 Pa. C.S.A. § 2501, in the Court of Common Pleas of Westmoreland County, Pennsylvania, at Docket No. CP-65-CR-1700-2010.  ECF No. 13 at 1.  See also Docket, Com. v. McWhite, No. CP-65-CR-1700-2010 (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-65-CR-0001700-2010&dnh=5Stv6b%2Bng0uxW3OrDCRmVA%3D%3D (last visited June 15, 2026)).

For the reasons stated herein, federal habeas relief will be denied.  A certificate of appealability also will be denied.[1]

_____

[1] The parties consented to the jurisdiction of a United States Magistrate Judge on May 23, 2023. ECF Nos. 4, 7, and 17.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts underlying Petitioner's conviction were recited by the state trial court,

and adopted by the Pennsylvania Superior Court in its Memorandum affirming the denial of relief

under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq.

> On April 3, 2010, at approximately 8:49 p.m., Shawntez "Sleeze" Weems was shot in the back while on his way to make a drug sale, walking down Constitution Boulevard, in the City of New Kensington, Westmoreland County, Pennsylvania. Eight discharged cartridge casings consistent with a .40 caliber gun were discovered in an area between an abandoned building and an apartment building located on Constitution Boulevard.
>
> Shortly before the shooting, a witness saw [Appellant] standing in the shadows across the street from Weems's residence. Two witnesses saw Weems come out of his house and walk down the street. They then saw [Appellant] follow him. Several minutes later, they heard gunshots.
>
> The Commonwealth additionally provided evidence that on May 29, 2008, [Appellant] was pistol whipped and robbed. [Appellant] learned that Weems was involved in this incident and, in the aftermath, made threats to retaliate against him. One of the Commonwealth witnesses testified that shortly before Weems was shot, [Appellant] said that he was going to kill him. Another testified that he saw [Appellant] in the afternoon on the day Weems was shot and heard [Appellant] say that he was going to "put a cap in Sleeze" because Sleeze took his drugs and money and that they could "get" Sleeze "outside of his crib, referring to his house."
>
> Sheldon "Pete" Pinnock, and Erica O'Neal, Pinnock's girlfriend, were at the mall on the night Weems was killed. Pinnock received a telephone call from [Appellant] who said that he was walking behind Weems and that he "had the drop on him." [Appellant] asked Pinnock to pick [Appellant] up at Pinnock's girlfriend's house. In a subsequent telephone call, [Appellant] told Pinnock that he shot Weems. Pinnock met [Appellant] and drove him to his car. On the ride to [Appellant's] car, [Appellant] told Pinnock that he had just shot at Sleeze with a .40 caliber gun. [Appellant] asked Pinnock to get rid of the gun for him and told Pinnock that he had hidden it in a bag under the porch stairs at Pinnock's girlfriend's house.
>
> After dropping off [Appellant], Pinnock retrieved the gun and gave it to Don Moyer with instructions to take the gun to Esquipula

2

"Polo" Griego's house. A week or so later, Pinnock went to jail and telephoned Griego, telling him to throw the gun in the river. Subsequently, Griego took police to the place where he disposed of the firearm. Divers were able to locate and secure the gun from the water. The firearm found in the river was a .40 caliber Glock handgun. An analysis of tool markings associated with this weapon showed that all eight cartridge casings found between the buildings on Constitution Boulevard were discharged from it.

Latoyia Graves testified that she was [Appellant's] girlfriend and that she was with [Appellant] on April 3, 2010. On that date, the two rode dirt bikes into the early evening. Around 7:00 p.m., they went to [Appellant's] mother's house, located on Fifth Avenue in the City of New Kensington. [Appellant's] mother's house was "close to a mile" from where Weems was killed. [Appellant] took a shower and then Graves took a shower. [Appellant], without Graves, left the house for about [20] or [30] minutes. Graves testified that she and [Appellant] then went to Pittsburgh after it was dark outside but before 8:00 p.m.

On direct examination, Graves acknowledged that she had been convicted of [r]eceiving [s]tolen [p]roperty in 2003 and volunteered that she was "on [f]ederal probation, supervised release, for distribution of crack cocaine." On cross-examination, the prosecutor asked Graves two questions about the sentence she received in federal court. On re-direct examination, counsel for [Appellant] asked Graves if she was doing well while on federal probation. The court sustained the prosecutor's objection after defense counsel stated before the jury that Graves has "absolutely no problem on probation, going to school, that she has a good relationship with her probation officer." No instruction to disregard counsel's statement was requested by the prosecutor or given by the court. Additional testimony was offered that, at one point during the investigation, Graves was interviewed by police at the Federal Probation Office.

On May 2, 2010, Officer Samuel Long, of the New Kensington Police Department, saw [Appellant] driving a black Buick with tinted windows. He knew that there was an arrest warrant for [Appellant]. This warrant was issued for criminal charges not in connection with the homicide. As officers followed [Appellant's] car, [Appellant] jumped out of the vehicle. [Appellant] was found hiding under a nearby car and taken into custody.

Marvin Ainsco, in a non-responsive answer to a question by the prosecutor, stated that he knew [Appellant] as a "drug dealer." Another witness, Erin Jarosinski, testified that she was with [Appellant] on January 12, 2010, when he made statements

3

threatening the victim. She said that they had been going together to get drugs and that she knew [Appellant] because he sold drugs. Jarosinski also admitted that she was a drug addict during the time she knew [Appellant]. No other reference was made to drug dealing activity on the part of [Appellant].

*Id.* at 4-7 (citations to the record omitted). On July 17, 2012, a jury found Appellant guilty of murder in the first degree and Appellant was sentenced to life without the possibility of parole. *Id.* Appellant's judgment of sentence was affirmed on August 23, 2013. *See Commonwealth v. McWhite*, 2013 WL 11256408 (Pa. Super. 2013) (unpublished decision).

Com. v. McWhite, No. 61 WDA 2021, 2021 WL 6140845, at *1-2 (Pa. Super Ct. Dec. 30, 2021).

The PCRA trial court opinion from which the Superior Court's recitation of facts was derived, but which has the added benefit of citations to the record, was filed by Respondents at ECF No. 35 at 397-414.

The Superior Court provided some additional factual background in its Memorandum denying Petitioner's direct appeal.

Defendant Anthony L. McWhite, a/k/a Tone, was charged and convicted of Homicide, First Degree Murder, after being tried by jury from July 9–17, 2012 before this Court. Facts elicited at trial revealed that on May 29, 2008 Mr. McWhite was pistol whipped by the victim, Shawntez Weems, a/k/a/ Sleeze, causing him to spend several days in the hospital. Thereafter Mr. McWhite stated that he knew the person who assaulted him was Mr. Weems, and that he was going to kill him.

On April 3, 2010 at 8:49 p.m. police officer Samuel Long received a call that multiple gunshots had been fired in the vicinity of Constitution Boulevard in New Kensington, PA. The officer proceeded to that area and discovered a body, later identified as Mr. Weems. He had sustained a gunshot wound to his back which fractured his third thoracic vertebrae and transected his spinal cord, causing death. Detective Hugh Shearer testified that he located eight cartridges and bullet fragments of four bullets at the scene. A fifth bullet was extracted from Mr. Weems' back at autopsy.

Erica O'Neil, the girlfriend of Sheldon Pinnock, testified that she and Sheldon were at The Childrens Place in the Pittsburgh Mills Mall, when at approximately 8:30 p.m. on April 3, 2010 Sheldon

4

received a call from Mr. McWhite. This witness heard Mr. McWhite state that he had been walking behind Mr. Weems who had on headphones and couldn't hear him. He stated that he shot him eight or nine times with a .40. He asked Mr. Pinnock to come get him. Mr. Pinnock testified that Mr. McWhite asked him to get rid of the gun and he agreed to this. Thereafter Mr. Pinnock gave the gun to Donald Moyer, who ultimately gave it to Esquipula Griego, known as Polo. Polo took the firearm to the area of Coxcomb Hill and threw it in the river.

Sometime thereafter a water rescue team retrieved the firearm. The firearm, a .40 caliber Smith and Wesson, was tested, and it was determined that all eight of the discharged cartridge casings had been discharged from that firearm.

Com. v. McWhite, No. 1416 WDA 2012, 2013 WL 11256408, at *1 (Pa. Super. Ct. Aug. 23, 2013).

Petitioner initiated the present matter on October 25, 2022 by submitting the instant Petition without payment of the filing fee or moving for leave to proceed *in forma pauperis* ("IFP"). ECF No. 1. After various delays, Petitioner corrected his filing deficiencies, and the Petition was formally filed on May 3, 2023. ECF No. 13.

Petitioner initially raised four claims of ineffective assistance of his trial counsel as grounds for federal habeas relief in the Petition. Id. at 5, 7, 8, and 10. However, in his later filed Traverse, Petitioner voluntarily withdrew three of those claims, see ECF No. 46 at 1-2, leaving only the following ground for relief.

GROUND FOUR: Trial Counsel rendered ineffective assistance of counsel for failure to object to a Jury charge of flight and concedment [*sic*] as consciousness of guilt.

(a) Supporting facts[:] During jury charge proceedings, the Trial Judge charged the Jury to consider Petitioner's fleeing on May 2, 2010 as guilt as to the murder of Shantez "Sleeze" Weems where the record was devoid of evidence demonstrating that Petitioner has knowledge that he was being wanted in connection with charges other than those for which he was standing trial for. The PCRA Ct. concluded that Petitioner failed to meet the Commonwealth v. Pierce, 527 A.2d 973 (Pa. 198 [*sic*] 3 prong standard adopted from Strickland v. Washington, 104 S.Ct. 2052 (1984) standard by the Pennsylvania Courts. The Pa. Superior Ct. affirmed that Petitioner failed to demonstrate a Sixth Amendment

5

ineffective assistance of counsel claim.  This determination involves an unreasonable application of Wiliams v. Taylor, 529 U.S. 362 (2000).

ECF No. 13 at 10.  See also ECF No. 46 at 1-2.

In the Traverse, Petitioner also argues that the Superior Court's treatment of his corresponding state court claim was based on an unreasonable determination of the facts.  ECF No. 46 at 2.

Respondents answered the Petition on September 7, 2023.  ECF No. 27.  As to procedural issues, the Answer included Respondents' concessions that the Petition was timely filed, and that the claims raised therein were exhausted and were not procedurally defaulted.  Id. at 5 and 6. However, as to the substance of Petitioner's claims, Respondents' Answer fails to provide a detailed analysis of the facts, citations to the underlying state court records, or much substance at all.[2]

Petitioner submitted the aforementioned Traverse on April 25, 2024.  ECF No. 46.

The Petition is ripe for consideration.

## II.    ANALYSIS OF THE MERITS OF PETITIONER'S REMAINING FEDERAL HABEAS CLAIM

At the outset, it is noted that a court typically considers whether a federal habeas petition meets the strict procedural requirements set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prior to addressing the merits of a habeas petition under Section 2254. See 28 U.S.C. §§ 2244(d) and 2254(b)(1).  However, given the fact that only a single, facially

---

[2] Despite having been explicitly put on notice of the specificity requirement for an Answer under the Rule Governing Section 2254 Cases and this Court's Local Civil Rule 2254, see ECF No. 14 at 1-2, Respondents essentially leave it to this Court to dig through the record on its own to decide the merits of Petitioner's claims.  But see Murthy v. Missouri, 603 U.S. 43, 67 n.7 (2024) ("judges are not like pigs, hunting for truffles buried in the record.") (internal citations and brackets removed).  Respondents are warned that further deficient performance in future cases may result in the imposition of sanctions.

exhausted claim for relief remains, as well as Respondents' concession that the Petition is both timely and exhausted, there is little benefit to a lengthy procedural analysis in this Memorandum Opinion. Accordingly, the undersigned will directly consider the Petitioner's claim at Ground Four on the merits.

**A.      Standard of Review**

Where the state court has reviewed a federal issue presented to it and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). The Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of [] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case. Lambert, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams, 529 U.S. at 405-06).

In addition, the United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pa. Dep't of Corrs., 834 F.3d 263, 368 (3d Cir. 2016) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)).  As the Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Specific factual determinations by the state court that are subsidiary to the ultimate decision to grant post-conviction relief are subject to the presumption of correctness, and must be overcome by Petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See also Lambert, 387 F.3d at 235-36.  The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-finding."  Id. at 236 n.19.  If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence. See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

It is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable

determination of the facts.  Ross v. Atty. Gen. of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008).  This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions.  Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied.  We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, No. 07-21, 2010 WL 3636164, at *10 n.20 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis added).  Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

To the extent that a claim was fairly presented to the state courts but was not addressed on the merits, *de novo* review applies.  Cone v. Bell, 556 U.S. 449, 472 (2009).  The same review applies to a claim that resulted from a state court decision that was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(1) and (2).

9

**B.     Petitioner's Ineffective Assistance of Counsel Claim at Ground Four will be Denied.**

Petitioner's sole remaining federal habeas claim is that his trial attorney was ineffective for failing to object to the trial court's jury instruction regarding Petitioner's flight as evidence of guilt (Ground Four).  ECF No. 13 at 10.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."  Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).  The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense.  Strickland, 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.  Id. at 690.

The first prong of the Strickland test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Id. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy."  Id. at 689.  The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place.  Id.  Instead, a petitioner is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at

687). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal quotation omitted).

The second prong requires a petitioner to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id. "It is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999).

In considering a claim of ineffectiveness of counsel, the courts of Pennsylvania use a three-part effectiveness test.

> To plead and prove ineffective assistance of counsel a petitioner must establish: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." Commonwealth v. Stewart, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. Id.

Future v. Ferguson, No. 16-2346, 2022 WL 2307095, at *8 (M.D. Pa. June 27, 2022), certificate of appealability denied sub nom. Future v. Sup't Benner Twp. SCI, No. 22-2419, 2022 WL 18536146, at *1 (3d Cir. Dec. 6, 2022). The United States Court of Appeals for the Third Circuit has found this test not to be contrary to Strickland. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

Here, the Superior Court applied Pennsylvania's three-part test to Petitioner's corresponding claim of ineffective assistance of counsel in his PCRA appeal. McWhite, 2021 WL 6140845, at *4. Accordingly, the Superior Court's analysis was not contrary to Strickland.

The Superior Court analyzed Petitioner's corresponding state claim as follows.

> In his fourth issue, Appellant challenges trial counsel's effectiveness in failing to object to a jury instruction regarding flight as evidence of guilt. Appellant argues that "[t]here is simply no evidence to suggest [ ] Appellant was aware he would be charged with homicide when he attempted to flee from Officer [Samuel] Long." Appellant's Brief at 28-29. The Commonwealth rebuts Appellant's contention by citing to notes of testimony from the jury trial which established that Appellant contacted a friend to transport him from the crime scene, confessed to that friend that he shot someone, and asked that friend to dispose of the gun. Commonwealth's Brief at 23.
>
>> A jury charge is proper if supported by the evidence of record. *Commonwealth v. Washington*, 692 A.2d 1024, 1028 ([Pa.] 1997). [Our Supreme] Court has held that "when a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis of a conviction in connection with other proof from which guilt may be inferred." *Commonwealth v. Rios*, 684 A.2d 1025, 1025 ([Pa.] 1996), *quoting Commonwealth v. Coyle*, 203 A.2d 782, 789 ([Pa.] 1964).
>
> *Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008) (cleaned up; parallel citations omitted).
>
> Appellant's challenge argues that the record is devoid of evidence demonstrating his guilty knowledge. Guilty knowledge, however, may be inferred by circumstantial evidence. *Commonwealth v. Robinson*, 128 A.3d 261, 267 (Pa. Super. 2015). Here, multiple witnesses testified that they heard Appellant make threats toward Weems prior to and including the day of his death. Subsequently, Appellant confessed to Pinnock that he shot Weems when he asked Pinnock to pick him up. He later told Pinnock that he shot Weems with a .40 caliber gun, hid the murder weapon, and asked Pinnock to dispose of it. Accordingly, sufficient circumstantial evidence supported the inference of guilty knowledge, as required for a jury instruction regarding flight as evidence of consciousness of guilt. Thus, the trial court would have properly overruled any objection to

12

the jury instruction. PCRA Court Opinion, 1/8/15, at 3. Moreover, Appellant fails to establish in what way he was prejudiced by such jury instruction when "the Commonwealth's evidence in support of a conviction was overwhelming." PCRA Court Opinion, 2/25/21, at 14; *see also Rios*, 684 A.2d at 1025 (flight instruction may form basis of conviction "in connection with other proof from which guilt may be inferred"). Thus, Appellant's fourth issue warrants no relief.

McWhite, 2021 WL 6140845, at *5.

The "overwhelming" evidence cited by the PCRA trial court, which the Superior Court referenced in its Memorandum, included:

evidence that the defendant had a motive for shooting Weems, that the defendant had made repeated threats to kill Weems, that the defendant was in the New Kensington area at the time of the shooting, that the defendant was seen following Weems minutes before the shooting, that the defendant confessed to his friends that he had shot Weems, and that the defendant had possession of the weapon that was used to shoot Weems.

ECF No. 35 at 410.

Based on this analysis, this Court finds that the Superior Court's decision rested on both the performance prong and prejudice prong of the Strickland test.

This Court has thoroughly reviewed the record, including the trial transcript – especially the portions thereof cited by the PCRA trial court, and upon which the Superior Court relied for the conclusion that Petitioner had failed to demonstrate prejudice. Based on that review, the undersigned cannot say that the Superior Court's determination was based on either an unreasonable application of Strickland, or an unreasonable determination of the facts. Instead, as recognized by the state court, the record includes sufficient evidence of Petitioner's guilt to support the Superior Court's conclusion that Petitioner had failed to demonstrate prejudice. Buehl, 166 F.3d at 172 ("It is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied.").

Accordingly, federal habeas relief will be denied.

13

### III.   CERTIFICATE OF APPEALBILITY

A certificate of appealability will be denied because jurists of reason would not find the foregoing debatable.  See, e.g., Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### IV.   CONCLUSION

For the foregoing reasons, the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 13, will be denied.  A certificate of appealability also will be denied.  An appropriate Order follows.

Dated: June  15 , 2026

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


cc:   Anthony Lamar McWhite
      KR-9589
      SCI Mahanoy
      301 Grey Line Drive
      Frackville, PA 17931

      All counsel of record (*via* CM/ECF)

14